IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 24, 2010

## IVAN MORENO a/k/a FERNANDO FILETO a/k/a ROBERTO LEPE-CERVANTES v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 207-A-208     Steve Dozier, Judge**

———

**No. M2009-00393-CCA-R3-PC - Filed June 21, 2010**

———

Petitioner, Ivan Moreno, a/k/a Fernando Fileto a/k/a/ Roberto Lepe-Cervantes, pled guilty to felony murder, aggravated rape, and especially aggravated robbery. Petitioner received an effective sentence of life in prison without the possibility of parole. Petitioner then filed a pro se petition for post-conviction relief claiming ineffective assistance of counsel and an involuntary guilty plea. After a hearing, the post-conviction court denied relief. Petitioner seeks a review of the post-conviction court's decision. Because Petitioner has failed to prove that his guilty plea was involuntary or that he received ineffective assistance of counsel, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Jeremy W. Parham, Nashville, Tennessee, for the appellant, Ivan Moreno.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Victor S. Johnson, District Attorney General, and Rachel Sobrero, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
*Factual Background*

In January of 2007, Petitioner was indicted for first degree premeditated murder, two counts of first degree felony murder, aggravated rape, especially aggravated robbery,

coercion of a witness, two counts of assault, resisting arrest, and the intentional killing of an animal.

In May of 2007, Petitioner pled guilty to one count of felony murder, one count of aggravated rape, and one count of especially aggravated robbery. Petitioner received a life sentence without the possibility of parole for the felony murder conviction. In addition, Petitioner received twenty-five year sentences for the aggravated rape and especially aggravated robbery convictions, to be served concurrently with each other and with his life sentence.

At the guilty plea hearing, the attorney for the State relayed the facts of the underlying convictions as follows:

> [O]n August twenty-first, two-thousand-six, several residents of the Cross Timbers neighborhood in Bellevue called police to report a reckless driver.
>
> Police officers responded to the neighborhood and found an empty car that matched the description of the car that was being driven recklessly.
>
> . . . .
>
> The car's tag number was run through the police computer system; and it was learned that the owner, [Petitioner] lived at Two-Thirty-Three Cross Timbers and that he had an outstanding misdemeanor driver's license warrant.
>
> Ivan Moreno's wife was present when the police arrived at Two-Thirty-Three Cross Timbers. She gave the officers consent to search the home. Ivan Moreno was not present.
>
> As the police left the residence, they spotted Ivan Moreno behind the house next door at Two-Twenty-Nine Cross Timbers. This was the home of his neighbor, seventy-four-year-old Miss Mary Sadler.
>
> The officers observed that [Petitioner] had blood on him. He was taken into custody on the outstanding warrant.
>
> Officer Al Walls went to Two-Twenty-Nine Cross Timbers to investigate. He discovered droplets of blood on the deck stairs leading up to the rear entrance.

Officer Walls looked through the glass sliding doors, which were closed, and saw Mary Sadler lying on the floor amid a scene of blood. Several items in the house were overturned and broken. Drawers had been opened and Miss Sadler's wallet was on the floor in a bedroom.

Her pet cockatiel, Aussie, died as a result of injuries sustained from [Petitioner]. Its wing was broken in four places, including one spiral compound fracture.

[Petitioner] took several items from the home of Mary Sadler, including a crucifix, a Game Boy, a karaoke machine, a credit card, a watch and an Ipod.

A crumpled check was found in the yard, in between Miss Sadler and [Petitioner's] home. It was a check from Miss Sadler to [Petitioner] for forty dollars. The check had a notation on it that it was, quote, a loan for Joanna, [Petitioner's] daughter.

[Petitioner] struck Mary Sadler about the head and body several times with a large, hard object, causing extensive skull fractures. He strangled her with a black cable ligature, causing extensive fractures of the hyoid bone and thyroid cartilege [sic].

[Petitioner] removed a part of Miss Sadler's clothing and penetrated her anus and rectum with a glass liquor bottle, leaving it inside her. The Medical Examiner determined that the cause of death was multiple blunt-force injuries and strangulation.

[Petitioner] was interviewed by the Metro Police and admitted to killing Mary Sadler. All of this occurred in Davidson County.

After the guilty plea, Petitioner filed a pro se petition for post-conviction relief. In the petition, Petitioner alleged that trial counsel failed to properly investigate and prepare for the case, failed to file a motion to suppress, and failed to file a motion for a psychiatric evaluation. Further, Petitioner alleged that his guilty plea was involuntary.

Counsel was appointed for Petitioner. The post-conviction court held a hearing on the petition. At the hearing, Petitioner testified that at the time of his arrest and subsequent guilty plea, he spoke a little English. Petitioner's primary language was Spanish. According to Petitioner, he did not understand very much English at all. Petitioner claimed that trial counsel promised to get a Spanish-speaking psychologist to evaluate him prior to trial.

Petitioner thought that he was meeting with a "Vanderbilt student" prior to the evaluation by the psychologist. Petitioner actually met with Terrence Flynn, an intern from the Vanderbilt School of Social Work who was working in the Public Defender's Office.

During Petitioner's meetings with Mr. Flynn, Petitioner explained that he kept a picture of the victim in his cell so that he could pray for her constantly. Petitioner explained that he felt better after praying for the victim, but Mr. Flynn suggested that Petitioner throw the picture away. Mr. Flynn promised to write the information down. Petitioner told Mr. Flynn about his teenage suicide attempt and explained that "everything was caused by alcohol." Petitioner claimed that he was suffering from depression and "seeing weird things in [his] cell, like animals and other stuff." Petitioner also told Mr. Flynn that he "wanted to commit suicide in [his] cell" at one point.

Petitioner testified at the hearing that he was taking medication for depression and that the medication did not help. Petitioner insisted that he informed trial counsel about the medication and his hallucinations prior to the entry of the guilty plea and trial counsel told Petitioner she would see what could be done. Petitioner admitted that he had seen a psychologist at the criminal justice center but argued that the psychologist said "nothing could be done and that it was normal." Petitioner complained that the psychologist did not speak Spanish. Petitioner was unable to explain what part of his mental condition or mental health history should have been investigated by trial counsel.

Petitioner informed the post-conviction court that after his teenage suicide attempt, he saw a psychologist in a "government hospital in Mexico." According to Petitioner, this psychologist left the hospital shortly after their meeting and did not return. Petitioner also recalled attending a drug and alcohol rehabilitation program. Petitioner did not provide the names of either of these medical facilities or documentation to support his claims.

Petitioner testified that he sought assistance from the mental health clinic twice while being housed at the criminal justice center. Petitioner acknowledged that he was put in touch with an interpreter but that neither of the consultations resulted in a mental health diagnosis.

Petitioner felt that his depression prevented him from adequately assisting his attorney. Further, Petitioner stated that his depression caused him to feel pressured during the plea process. Petitioner did not recall the crimes for which he entered the plea or his confession to police. In fact, Petitioner insisted that he repeatedly told trial counsel that he could not remember the crimes. Additionally, Petitioner thought that he was intoxicated during the interview with police during which he admitted to killing the victim.

Trial counsel testified at the hearing on the post-conviction petition. According to trial counsel, she communicated with Petitioner in Spanish. Trial counsel recalled Petitioner informing her about his history of depression and substance abuse. Trial counsel discussed a psychological exam with Petitioner and understood that the exam would have to be conducted in Spanish. Trial counsel tried to contact four different people to perform the evaluation. Additionally, trial counsel contacted the attorney with the Mexican Capital Legal Assistance Project. Trial counsel was eventually able to locate expert Antonio Puente. Trial counsel wanted to consult with Puente in hopes of mitigating Petitioner's sentence. Unfortunately, they were unable to secure an evaluation prior to the date of the plea. However, after reviewing the evidence, trial counsel felt that a defense of intoxication or diminished capacity would not be successful. Trial counsel primarily wanted to obtain the mental evaluation for mitigation in sentencing.

At the conclusion of the post-conviction hearing, the post-conviction court took the matter under advisement. In a separate order, the post-conviction court explained that "Petitioner failed to prove any factual allegations by clear and convincing evidence that his counsel was ineffective." Specifically, the post-conviction court accredited the testimony of trial counsel that she met with Petitioner and fully explained the consequences of the plea. Further, the post-conviction court determined that Petitioner understood the nature and consequences of the plea as evidenced by the thorough questioning at the plea hearing. Moreover, the post-conviction court noted that Petitioner himself acknowledged that it was his decision to enter the plea, even though it was difficult to make that decision. The post-conviction court also reviewed Petitioner's statement. The post-conviction court pointed out that "[P]etitioner used English at times when he was communicating with the police and no legal basis exists for suppressing the statement." The post-conviction court also found that trial counsel met with Petitioner several times and determined that there was no basis for a mental evaluation. In conclusion, the post-conviction court noted that:

> [P]etitioner has failed to prove by clear and convincing evidence the factual allegations in his petitions. He has not demonstrated by the requisite standard that counsel's performance was deficient or that counsel was not acting with the competence required of attorneys in criminal cases, or that he would have determined to go to trial absent the deficient performance. The Court believes [P]etitioner knowingly and voluntarily agreed to the plea agreement . . . ."

The post-conviction court denied relief and dismissed the petition.

Petitioner appeals, challenging the dismissal of the petition for relief.

*Analysis*
*Post-Conviction Standard of Review*

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *See Shields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

*Ineffective Assistance of Counsel*

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997).

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. *See id.* at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *Burns*, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. 1994).

This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). As stated above, in order to successfully challenge the effectiveness of counsel, Petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *See Baxter*, 523 S.W.2d at 936. Under *Strickland v. Washington*, 466 U.S. 668, 694 (1984), Petitioner must establish: (1) deficient representation; and (2) prejudice resulting from the deficiency. However, in the context of a guilty plea, to satisfy the second prong of *Strickland*, Petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

When analyzing a guilty plea, we look to the federal standard announced in *Boykin v. Alabama*, 395 U.S. 238 (1969), and the State standard set out in *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977). *State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999). In *Boykin*, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. *Boykin*, 395 U.S. at 242. Similarly, our Tennessee Supreme Court in *Mackey* required an affirmative showing of a voluntary and knowing guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. *Pettus*, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. *Pettus*, 986 S.W.2d at 542; *Blankenship*, 858 S .W.2d at 904.

On appeal, Petitioner complains that trial counsel committed "multiple errors in representing him" but addresses only the failure of trial counsel to "procure a mental health evaluation" prior to the entry of the guilty plea. Petitioner additionally contends that his guilty plea was involuntary; that trial counsel "pressured" him in to pleading guilty.

At the post-conviction hearing, Petitioner claimed that he met with the intern from Vanderbilt in preparation for a mental health evaluation. During these meetings, Petitioner informed the intern about his past suicide attempts, depression, hallucinations, and suicidal thoughts. Petitioner complained that trial counsel failed to secure a mental evaluation despite her knowledge of Petitioner's problems. Trial counsel testified that Petitioner's mental health would be beneficial at sentencing and that she tried to contact several experts who could assist in the evaluation process. Trial counsel even contacted an attorney with the Mexican Capital Legal Assistance Program.

In the order denying post-conviction relief, the post-conviction court accredited the testimony of trial counsel. Petitioner presented no evidence concerning his mental health beyond his own testimony. The post-conviction court determined that the decision to forgo a mental evaluation was a tactical decision made by trial counsel after preparation for the case. Again, we will not second-guess a reasonably-based trial strategy that is made after adequate preparation for the case. *Adkins*, 911 S.W.2d at 347; *Cooper*, 847 S.W.2d at 528. "[Q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact," and the post-conviction court's credibility determinations are conclusive on appeal unless the evidence preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). We find no evidence to preponderate against the findings of the trial court. Further, Petitioner has failed to show that there is a reasonable probability that the proceedings would have concluded differently had counsel performed the suggested task. *Vaughn v. State*, 202 S.W.3d 106, 120 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 687). The evidence does not preponderate against the determination of the post-conviction court.

Moreover, Petitioner has failed to show that but for trial counsel's alleged deficiencies, he would have refused to plead guilty and insisted on going to trial. The transcript of the guilty plea hearing reflects that the trial court went to great lengths to discuss the ramifications of the guilty plea with Petitioner. There was an interpreter present who translated everything at the hearing. Petitioner was thoroughly questioned by the trial court to ascertain whether he understood the effects of the plea.

Petitioner complains that he had no choice but to plead guilty, he did not understand what he was doing, and trial counsel pressured him to plead guilty. In other words, he claims he was coerced into pleading guilty. After hearing the evidence, the post-conviction court accredited the testimony of trial counsel. The plea hearing indicates that Petitioner knew what he was doing, understood the plea, and agreed that it was what he wanted to do to resolve the case. Petitioner has failed to show by clear and convincing evidence that he received ineffective assistance of counsel or that his guilty plea was involuntary. We recognize that because of a language barrier, Petitioner may have had difficulty

-8-

understanding portions of the plea. However, the transcript from the guilty plea reveals that the terms of the plea were fully and completely explained to Petitioner through an interpreter prior to the entry of the plea. Finally, even though Petitioner claims that he had no choice but to plead guilty, the plea hearing indicates that Petitioner knew what he was doing, understood the plea, and agreed that it was what he wanted to do to resolve the case. Petitioner himself admitted to the post-conviction court that he chose to plead guilty. Petitioner has failed to show by clear and convincing evidence that he received ineffective assistance of counsel or that his guilty plea was involuntary. Petitioner is not entitled to relief.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
JERRY L. SMITH, JUDGE